**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VELVET D. REESE,

        Plaintiff,

v.                                        CIV 19-0139 KBM

ANDREW SAUL,
Commissioner of Social
Security Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse for Remand for Rehearing with Supporting Memorandum (*Doc. 22*) filed on October 9, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 10, 11.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On November 4, 2015, Ms. Velvet D. Reese (Plaintiff) protectively filed an application with the Social Security Administration (SSA) for Supplemental Security Income under Title XVI of the Social Security Act. Administrative Record[1] (AR) at 156-61. Plaintiff alleged a disability onset date of June 27, 2015. AR at 156. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially

---

[1] Document 30-1 contains the sealed Administrative Record. *See Doc. 30-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR at 52-63) and on reconsideration (AR at 64-78). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her SSI application. AR at 95-97.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 30-51. ALJ Ann Farris issued an unfavorable decision on March 29, 2018. AR at 12-29. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 151-55), which the council denied on January 10, 2019 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v.*

2

*Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Farris found that while Plaintiff had worked part-time as a dental assistant after her application date, her "income does not rise to the level of substantial gainful activity" and thus she "has not engaged in substantial gainful activity since November 4, 2015, the application date . . . ." AR at 17 (citing 20 C.F.R. § 416.971). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: major depressive disorder and generalized anxiety disorder." AR at 17 (citing 20 C.F.R. § 416.920(c)). The ALJ also noted that Plaintiff "has the non-severe impairment of obesity" but has not "experienced any functional limitation related to this impairment." AR at 17-18.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 18 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). In making this determination, ALJ Farris

found that Plaintiff's mental impairments met neither the "paragraph B" nor the "paragraph C" criteria. AR at 18-19.

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." AR at 20. The ALJ considered the evidence of record as well as the opinions of Plaintiff's treating psychologist, the consultative psychologist and physician, the state agency medical consultants, and Plaintiff's sister. AR at 20-24. Ultimately, the ALJ found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels and can make simple, work related decisions with few workplace changes. She can have occasional and superficial interactions with the general public and with coworkers." AR at 19.

ALJ Farris concluded that Plaintiff is unable to perform any past relevant work (AR at 24 (citing 20 C.F.R. § 416.965)), but she is able to perform work as a hand packager, prep cook, and cleaner (housekeeping). AR at 24-25. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since November 4, 2015 . . . ." AR at 25 (citing 20 C.F.R. § 416.920(g)).

## III.   Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

IV.   **Discussion**

Plaintiff asserts that three issues merit remand: (1) the ALJ failed to use the correct legal standard in evaluating the opinions of her treating psychologist and the state agency doctor; (2) the ALJ failed to include all of her mental limitations in the RFC resulting in error at Step Five; and (3) the ALJ failed to provide a constitutionally valid hearing under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *Doc. 22* at 1-2.

**A.      Plaintiff has waived her Appointments Clause argument.**

Before turning to Plaintiff's substantive arguments, the Court must first determine the impact of her Appointments Clause challenge, raised for the first time in briefing before this Court. Plaintiff argues that because ALJ Farris was not appointed in accord with the Appointments Clause, Art. II, § 2, cl. 2, she did not receive a constitutionally valid hearing and this case must be remanded. *Doc. 22* at 20-21. Plaintiff bases her argument on the United States Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). The *Lucia* Court found that ALJs in the Securities and Exchange Commission qualify as "Officers of the United States" subject to the Appointments Clause and must be appointed by the President, a court of law, or the head of the department. 138 S. Ct. at 2051, 2055. "To correct any similar constitutional issue, on July 16, 2018, the Acting Commissioner of the SSA appointed all of the agency's ALJs." *McCray v. Soc. Sec. Admin.*, No. CIV 19-0090 JB/GBW, 2020 WL 429232, at *9 (D.N.M. Jan. 28, 2020) (citing SSR 19-1, 2019 WL 1324866, at *2 (March 15, 2019)).

The Commissioner does not dispute that ALJ Farris had not been properly appointed at the time of the administrative hearing in this matter (*see Doc. 31* at 15 n.5), but contends that Plaintiff has waived this argument by failing to raise it at the agency level (*id.* at 15). "In *Lucia*, the Supreme Court held that a party 'who makes a *timely* challenge to the constitutional validity of the appointment of an officer . . . is entitled to relief.'" *Id.* (quoting *Lucia*, 138 S. Ct. at 2055). The Commissioner urges the Court to deny Plaintiff's motion on this issue, because she failed to raise it to either the ALJ or the Appeals Council and, thus, forfeited the issue. *Id.*

Plaintiff responds that she "could not have raised this issue" at the administrative level, because both her hearing (conducted on October 18, 2017 (AR at 30)) and the ALJ's decision (issued on March 29, 2018 (AR at 25)) pre-dated *Lucia*. *Doc. 32* at 8 (citing *Brunson v. Saul*, No. CIV 18-5562, 2019 WL 3413520, at *3 (E.D. Pa. July 26, 2019)). The plaintiff in *Malouf v. SEC* made a somewhat similar argument, theorizing that any Appointments Clause "challenge would have been futile because the SEC would undoubtedly have denied relief" as there had been no "prior SEC decisions on the issue . . . ." 933 F.3d 1248, 1256-57 (10th Cir. 2019). The Tenth Circuit rejected this argument and noted that although "the SEC frequently rejected challenges under the Appointments Clause" at the time Malouf began his administrative appeal, "these decisions do not mean that the SEC necessarily would have rejected a challenge by Mr. Malouf." *Id.* at 1257 (citing *Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012) ("Requiring exhaustion of [claims asserted against agency precedent or an agency's litigation position] allows agencies to take into account the specific facts of each matter, and to change course if appropriate.")). As in *Malouf*, had Plaintiff raised this issue at the administrative level, the SSA might have considered the Appointments Clause issue and cured any error earlier; "if it did not, the [SSA] would at least be put on notice of the" issue. *See id.* (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

Indeed, existing Supreme Court precedent put Plaintiff "on notice that she was required to raise her Appointments Clause challenge during the administrative process to preserve the issue for review by this Court." *Rabache v. Saul*, No. 1:18-CV-00847-LF, 2019 WL 7288873, at *4 (D.N.M. Dec. 30, 2019). The Supreme Court in *L.A. Tucker*

7

*Truck Lines* held that a party who raised the issue of a statutorily invalid appointment at the district court level had waived the issue by failing to raise it during the administrative proceeding. 344 U.S. at 37. The Court opined that an administrative agency should have the first opportunity to correct such errors. *See id.* ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.") Similarly, in *Elgin v. Department of Treasury*, the Court found that a plaintiff must first raise a constitutional concern about a federal statute to the Merit Systems Protection Board or judicial review is precluded. 567 U.S. 1, 22-23 (2012). Because Plaintiff failed to raise this issue during the administrative process, the SSA was denied any opportunity to consider and correct any error.

Plaintiff next claims that "there is no issue exhaustion requirement at the Appeals Council" level. *Doc. 32* at 8. "In *Sims* [*v. Apfel*, 530 U.S. 103 (2000)], the [Supreme] Court addressed the question of whether a claimant seeking judicial review of a denied Social Security claim waives any issue the claimant failed to include in a request for review before the Appeals Council." *Rabache*, 2019 WL 7288873, at *6. The Court rejected such a requirement, largely because the SSA administrative review process is nonadversarial and because the Appeals "Council[,] not the claimant, has primary responsibility for identifying and developing the issues" on review. *Sims*, 530 U.S. at 111-12. But *Sims* dealt only with issue exhaustion at the Appeals Council level. "Importantly, . . . the *Sims* Court expressly stated that '[w]hether a claimant must exhaust issues before the ALJ [as opposed to the Appeals Council]'" was not before it.

*Rabache*, 2019 WL 7288873, at *6 (quoting *Sims*, 530 U.S. at 107). Thus, *Sims* is inapplicable to the question of whether Plaintiff was required to raise her Appointments Clause challenge to the ALJ. *See id.*

Plaintiff next argues that the SSA "does not require the [Appointments Clause] issue to be raised before the ALJ." *Doc. 32* at 8 (citing SSR 19-1p, 2019 WL 1324866). Social Security Ruling 19-1p defines a "timely" request for review of an Appointments Clause challenge as one that the claimant raises "either at the Appeals Council level" *or* "at the ALJ level . . . ." 2019 WL 1324866, at *3. Thus, Plaintiff was required to raise her issue at either of the two levels in order for her request to be considered timely. *See id.*

Finally, Plaintiff contends that this Court should adopt the reasoning in *Cirko on behalf of Cirko v. Commissioner of Social Security*, in which the Third Circuit found that a social security claimant may raise an Appointments Clause challenge for the first time to the district court. *Doc. 38* at 2-3 (citing *Cirko*, 948 F.3d 148 (3d Cir. 2020)). *Cirko* is not binding authority, however, and the Court does not find it persuasive.

The *Cirko* court declined to impose an exhaustion requirement for three reasons. First, it found that exhaustion is not "appropriate" for an Appointments Clause challenge. *Cirko*, 948 F.3d at 153-54. It compared *Lucia* to *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), where the Supreme Court declined to enforce exhaustion in an Appointments Clause challenge to a "special trial judge" of the United States Tax Court. *Id.* (discussing *Freytag*, 501 U.S. at 878-80). The *Freytag* court explained that the challenge presented "went directly 'to the validity of the Tax Court proceedings,' and effectively the scope of cases that special trial judges could preside over, such that it was a 'rare case[ ]' for which the court should exercise discretion to

hear issues not previously raised below." *Gagliardi v. Soc. Sec. Admin.*, No. 18-CV-62106, 2020 WL 966595, at *5 (S.D. Fla. Feb. 28, 2020) (quoting *Freytag*, 501 U.S. at 873-74). Plaintiff's case is not so "rare" that it should be excused from the exhaustion requirement. *See id.* Indeed, the Tenth Circuit explicitly discussed *Freytag* in holding that the *Malouf* claimant was required to raise his Appointment Clause challenge during the SEC administrative proceedings. *See Malouf*, 933 F.3d at 1258.

The *Cirko* court next relied on *Sims* and found that, "[l]ike Appeals Council hearings, ALJ hearings have no express exhaustion requirements[,] . . . [which] cut[s] against an exhaustion requirement for Appointments Clause challenges." 948 F.3d at 155-56 (citation omitted). Yet *Sims* does not stand for the proposition that Social Security claimants may raise arguments for the first time to district courts without first presenting the arguments to ALJs. The Commissioner cites to several cases in which courts have found that Social Security claimants must raise issues at the administrative level in order to preserve them on appeal to district courts. *See Doc. 31* at 18-19 n.7 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003)) (subsequent citations omitted). In *Mills v. Apfel*, for example, the First Circuit expressly declined to extend *Sims* and found that a claimant who failed to raise an issue to the ALJ could not then raise it to the district court. 244 F.3d 1, 8 (1st Cir. 2001). The court opined that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process." *Id.* This Court agrees and finds *Cirko* unpersuasive on this point.

10

Finally, the *Cirko* court weighed the interests of claimants and the Government and found that an exhaustion requirement "would impose an unprecedented burden on SSA claimants[,]" particularly on those who are unrepresented.[2] 948 F.3d at 156-57. The court opined that "[t]he Government's interest in requiring exhaustion . . . is negligible at best[,]" because the agency has neither the expertise nor the ability to remedy an Appointments Clause error. *Id.* at 158 (quotation and citation omitted). This reasoning is contrary to the Tenth Circuit's directive in *Malouf*, requiring claimants to at least put the agency on notice of the claim. 933 F.3d at 1257. Faced with this Tenth Circuit precedent, the Court finds *Cirko*'s reasoning on this point unavailing.

Plaintiff indicates that should the Court find against her on both the substantive issues and Appointments Clause challenge, she would not object to a stay of this case until the Tenth Circuit issues its decision in two pending consolidated social security appeals addressing the Appointment Clause issues. *Doc. 38* at 4 (citing *Carr v. Comm'r* and *Minor v. Comm'r*, Nos. 19-5079 & 19-5085 (10th Cir)). Having listened to the arguments before the Tenth Circuit in those cases, the Court declines to issue such a stay and will deny Plaintiff's motion on the Appointments Clause issue.

### B.  The ALJ adequately examined and incorporated the opinions of Plaintiff's treating psychologist and the state agency psychiatrist.

Plaintiff argues that ALJ Farris inadequately evaluated the opinions of her treating psychologist, Dr. Renee H. Wilkins, Psy. D., M.P., and the state agency

---

[2] The *McCray* court also emphasized this point, as it was faced with a pro se claimant. *See* 2020 WL 429232, at *16. ("More importantly, however, McCray did not have representation in the proceedings before the SSA. Reviewing courts have suggested that an unrepresented status makes a difference.") (citation omitted). Thus, *McCray* is inapposite, because Plaintiff here was represented by Attorney Stephanie Spanhel at the hearing before ALJ Farris. *See* AR at 15, 30.

psychiatrist, Dr. Aroon Suansilppongse, M.D. *Doc. 22* at 4-17.

### 1.   Dr. Wilkins

The Treating Physician Rule[3]

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir.

---

[3] Because Ms. Reese filed her claim in 2015, the "treating physician rule" applies. It should be noted that in Revisions to Rules Regarding the Evaluation of Medical Evidence published on January 18, 2017, the Agency revised its medical evidence rules. *See* 82 Fed. Reg. 5844-01 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the new SSA regulations make a number of changes, including: (1) eliminating the treating physician rule; (2) expanding the definition of "acceptable medical sources"; and (3) changing the articulation standards required of ALJs in assessing medical source opinions.

citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference [she] will accord the opinion after considering the six deference factors listed" in 20 C.F.R. § 416.927. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that [she] ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119). The ALJ's "determination, like all of [her] findings, must be supported by substantial evidence." *Id.*

The ALJ's evaluation of Dr. Wilkins's opinions

Dr. Wilkins submitted a letter in February 2016 and a mental impairment questionnaire in August 2017. AR at 22-23; 475; 827-28. Dr. Wilkins opined in the February 2016 letter that Plaintiff "was not psychologically stable enough to maintain any type of employment[,]" but she could not "determine whether [Plaintiff] would [ever] be able to be gainfully employed." AR at 23 (discussing AR at 475). ALJ Farris gave

"this opinion little weight, as [Dr. Wilkins] declined to opine on [Plaintiff's] functional limitations during the period at issue." AR at 23.

In the August 2017 mental impairment questionnaire, Dr. Wilkins opined that Plaintiff has <u>moderate</u> limitations in her abilities to:  perform activities within a schedule, be punctual and maintain regular attendance; and make simple work-related decisions. AR at 828. She has <u>moderate to marked</u> limitations in her ability to maintain attention and concentration for extended periods. AR at 828. She has <u>marked</u> limitations in her abilities to: accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. AR at 828. And she has <u>extreme</u> limitations in her abilities to: work in coordination with or proximity to others without being distracted; and interact appropriately with the general public. AR at 828. Dr. Wilkins opined that Plaintiff would be absent more than three times a month due to her impairments or treatment and that Plaintiff is not capable of performing a full-time job on a regular and continuing basis. AR at 828. ALJ Farris gave "this opinion little weight, as the evidence showing moderately stable symptoms does not support the severity of [the opined] limitations." AR at 23.

At the first step of the treating physician analysis, it is clear that the ALJ found Dr. Wilkins's opinions were not supported by or were inconsistent with the record evidence due to her conclusion that the August 2016 opinion is not supported by "the evidence showing moderately stable symptoms . . . ." AR at 23. At the second step, the ALJ found that Dr. Wilkins's first opinion did not contain functional limitations, and the second opinion was not supported by the record evidence. AR at 23. Plaintiff contends that the ALJ failed to consider all relevant factors at the second step. *Doc. 22* at 8-15. While ALJ

Farris did not explicitly address the six deference factors, the Court finds that her
evaluation passes muster.

With respect to the first, second, and fifth factors, ALJ Farris noted that Dr.
Wilkins was Plaintiff's treating psychologist. AR at 22. She also cited treatment records
from 2012, the year Plaintiff began seeing Dr. Wilkins, through 2016. *See, e.g.*, AR at
22 (citing AR at 642 (Oct. 13, 2012 progress note), (citing AR at 682 (Dec. 22, 2016
progress note)). It appears that the ALJ implicitly considered the third and fourth factors,
as she found that Dr. Wilkins did not assess Plaintiff's functional limitations in February
2016, and that the severity of limitations she opined in August 2017 was not supported
by the record evidence, which showed "moderately stable symptoms." AR at 23. Plaintiff
contends it was error for the ALJ to disregard the February 2016 opinion on the basis it
did not contain functional limitations. *Doc. 22* at 8-9. Yet, the ALJ may discount an
opinion on the basis that it is not supported by relevant evidence, such as functional
limitations. *See* 20 C.F.R. § 404.1527(c)(3); *Chapo v. Astrue*, 682 F.3d 1285, 1289
(10th Cir. 2012) (holding that "ALJ properly gave no weight to [a] conclusory form, which
lacked any functional findings")).

The Court notes that while there is some support for Dr. Wilkins's opinion in her
own treatment notes (*see, e.g.*, AR at 376 (June 9, 2016 progress note observing that
Plaintiff "drop[ped] out of dental hygienist school due to the stress"), 439 (Aug. 29, 2015
progress note relaying Plaintiff's "excessive worry and anxiety almost daily" causes
"difficulty concentrating," insomnia, and other symptoms that interfere with activities of
daily living)), there is also substantial evidence in the record to support the ALJ's
findings. Earlier in her decision, ALJ Farris discussed a variety of treatment records that

detract from Dr. Wilkins's opinions. For example, the ALJ noted that Plaintiff had "coherent thought processes with good insight[,]" "a neutral mood with appropriate affect[,]" and that she "denied anxiety and depression" at physical examinations. AR at 20-21 (citing AR at 347, 847, 859). She cited to a number of Dr. Wilkins's records that reported a Global Assessment of Functioning (GAF) of 65 or higher (AR at 21-22 (citing AR at 265, 282, 284, 286, 288, 290, 292, 295, 297, 299, 302, 304, 306, 308, 624, 626, 628, 630, 632, 634, 636, 640)), observed a euthymic mood, appropriate affect, and an improvement in symptoms (AR at 22 (citing AR at 280)), found that Plaintiff's judgment, insight, recent memory, and remote memory were intact (AR at 22 (citing AR at 772)), reported that Plaintiff "was so focused on school that she did not have time to worry" (AR at 22 (citing AR at 735)), and discussed methods Plaintiff learned to handle her anxiety and stress (AR at 22 (citing, *e.g.*, AR at 738, 770)).

Plaintiff argues that the ALJ ignored record evidence that would support the limitations expressed in Dr. Wilkins's August 2017 opinion. *Doc. 22* at 9-15. She cites, for example, Dr. Wilkins's notes of "excessive worry and anxiety," "difficulty concentrating," insomnia, tearfulness, that she "was staying in her house 'all the time,' and was having difficulty waking up to go to work for the two days she put in her hours." *Id.* (citing AR at 420, 439, 441, 443, 445, 447, 449, 452, 775). Yet the ALJ touched on several of these records – she noted Plaintiff's "extreme tearfulness due to stress and anxiety[,]" her report of "multiple situational stressors and difficulty sleeping[,]" (AR at 22 (citing AR at 276)), and the fact that she was treated with therapy and medications (AR at 22 (citing AR at 307, 657)). It is true that the ALJ did not explicitly discuss all of the records Plaintiff cites, but she did review many of them. Ultimately, the Court finds that

substantial evidence supports the ALJ's conclusion that Plaintiff was "moderately stable with no acute issues." AR at 22 (citing AR at 682, 687). Plaintiff essentially asks the Court to reweigh the evidence, which is not within this Court's purview. The Court finds no legal error in the ALJ's evaluation of Dr. Wilkins's opinions.

### 2.    Dr. Aroon Suansilppongse

Plaintiff next argues that although the ALJ gave Dr. Suansilppongse's opinion great weight, she did not explain why she rejected his finding of a moderate limitation in Plaintiff's ability to accept instructions from and respond appropriately to criticism from supervisors. *Doc. 22* at 17 (citing AR at 74). Dr. Suansilppongse is a state agency psychiatrist who reviewed Plaintiff's file at the reconsideration level and completed a Mental RFC (MRFC) Assessment form. He assessed several moderate limitations in the areas of sustained concentration and persistence, social interaction, and adaptation. AR at 74-75. ALJ Farris incorporated some of these moderate limitations into the RFC, but as Plaintiff observes, the ALJ failed to incorporate any limit regarding Plaintiff's ability to interact with supervisors. *See Doc. 22* at 17; AR at 19. The ALJ did not explain why she omitted this limitation. *See* AR at 23-24.

The MRFC Assessment form instructs the author to answer a series of questions to "help determine the individual's ability to perform sustained work activities." *See* AR at 73. The author then rates the level of each limitation. *See* AR at 73-75. The author also provides a narrative explanation of the limitations indicated. *See* AR at 73-75. The form explains that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." AR at 73.

Dr. Suansilppongse found that Plaintiff had moderate limitations in several different abilities; at issue here are the social interaction limitations. AR at 74-75. In this area, Dr. Suansilppongse found moderate limitations in Plaintiff's abilities to: (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR at 74. ALJ Farris incorporated two of the three limitations into the RFC by restricting Plaintiff to "occasional and superficial interactions with the general public and with coworkers[,]" (AR at 19), but she did not include a restriction regarding supervisors. Plaintiff argues that this failure constitutes reversible error. *Doc. 22* at 17.

It is true that an ALJ errs where she "accept[s] some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but reject[s] others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007). The Tenth Circuit has clarified, however, that the notations of moderate limitations "serve[] only as an aid to [the] assessment of the [RFC]." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016). The Tenth Circuit instructs courts to compare the ALJ's RFC findings to the psychologist's narrative explanation, not to the "notations of moderate limitations." *Id.*

In the narrative to the social interaction limitations section, Dr. Suansilppongse explained, "[Plaintiff's] social avoidance and infrequent episodes of crying spells and agitation would occasionally interfere with her ability to interact appropriately with supervisors, coworkers or the public. However, she would be able to complete tasks with infrequent contact with others." AR at 74. In the "Additional Explanation" section,

Dr. Suansilppongse summarized his findings as follows: "The psychiatric impairment severity does not meet or equal any Listing. [Plaintiff] has mental capacity for work related activity with infrequent contact with coworkers and the public. [Plaintiff's] allegations are supported and not inconsistent with medical evidence." AR at 75.

This narrative explanation sheds light on the psychiatrist's finding of moderate limitations. He tempered his list of moderate restrictions on social functioning by explicitly finding that Plaintiff has the capacity to work with a restriction to "infrequent contact with coworkers and the public." AR at 75. Thus, he did not see a need to incorporate a restriction on Plaintiff's interaction with supervisors, and the ALJ did not err in omitting any such restriction.

Moreover, as the Commissioner observes, the ALJ identified jobs (hand packager, prep cook, and housekeeping cleaner) that "involve 'the least amount of contact with other people." *Doc. 31* at 10 (citing AR at 50); *see also* DOT 920.587-018, 1991 WL 687916 (Jan. 1, 2016); DOT 317.687-010, 1991 WL 672752 (Jan. 1, 2016); DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016). This comports with the narrative section explanation that Plaintiff "would be able to complete tasks with infrequent contact with *others*[,]" (AR at 74 (emphasis added)), a finding that the ALJ followed by limiting Plaintiff's contact with both coworkers and the public. Thus, the Court finds that the ALJ's RFC findings adequately capture Dr. Suansilppongse's moderate limitations as expressed in the narrative portion and additional explanation section of the form.

For all of these reasons, Plaintiff's motion will be denied on this issue of asserted error in the ALJ's consideration of the medical opinions of both Dr. Wilkins and Dr. Suansilppongse.

**C.     The RFC is supported by substantial evidence.**

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ erred in evaluating Plaintiff's symptoms in accordance with Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 22* at 18-20. Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

  Relevant to this issue, ALJ Farris discussed:

 "Daily activities": ALJ Farris observed that Plaintiff "continues to drive but feels overwhelming fear and anxiety. She . . . needs someone to accompany her while shopping." AR at 20. She can "use a computer for online classes and has a smart phone to play games." AR at 20. She "testified that she attends church and is able to get along with people in the congregation." AR at 20.

 "Factors that precipitate and aggravate the symptoms": Relevant to Plaintiff's mental impairments, the ALJ noted Claimant's testimony "that she would be unable to work 40-hour weeks because she feels her brain shuts off due to panic." AR at 20. The ALJ observed that Plaintiff reported "extreme tearfulness due to stress and anxiety" and "multiple situational stressors and difficulty sleeping." AR at 22 (citing AR at 276). Plaintiff reported stress due to dental hygienist school (AR at 22 (citing AR at 771)) and anxiety due to difficulty in language class (AR at 22 (citing AR at 735)).

 "Type, dosage, effectiveness, and side effects of any medication": The ALJ noted that Plaintiff is treated with several different prescriptions, and "she reported no side effects." AR at 22 (citing AR at 280, 307, 657).

 "Treatment other than medication" and "Any measures other than treatment an individual uses or has used to relieve pain or other symptoms": The ALJ cited to records from Plaintiff's therapy with Dr. Wilkins from 2012-2016. *See, e.g.*, AR at 22 (citing AR at 642 (Oct. 13, 2012 progress note), (citing AR at 682 (Dec. 22, 2016 progress note)). The ALJ observed that as part of Plaintiff's therapy, she worked on "alleviating anxious

and depressed mood[,]" "identify[ing] and replac[ing] negative self-talk and increase[ing] the frequency of positive statements[,]" and "ways to handle [stressors] including being assertive." AR at 22 (citing AR at 738, 770, 774).

Plaintiff argues that the ALJ used boilerplate language to dismiss her alleged symptoms and failed to discuss the relevant factors required by 20 C.F.R. § 404.1529(c)(3). *Doc. 22* at 19. As the above summary shows, however, the ALJ adequately discussed the relevant factors throughout her decision, even if she did not identify them as such. *See* AR at 20-22. The Court finds that the ALJ adequately evaluated Plaintiff's statements pursuant to SSR 16-3p and summarized the record in light of Plaintiff's statements. Again, the Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of her symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Plaintiff's motion will be denied on this issue as well.

## V.   Conclusion

The Court finds that Plaintiff waived her Appointments Clause challenge by failing to raise it during the administrative proceedings. The Court further finds that the ALJ sufficiently evaluated Dr. Wilkins's opinions, incorporated the limitations expressed in Dr. Suansilppongse's opinion, and adequately evaluated Plaintiff's subjective

complaints. Having reviewed the record as a whole, the Court determines that substantial evidence supports ALJ Farris's decision.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse for Remand for Rehearing with Supporting Memorandum (*Doc. 22*) is **DENIED**. A final order consistent with Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent